IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DEMARIO SCOGGINS                                                                                        PLAINTIFF

V.                                              CIVIL NO. 4:11-cv-04073

JANA TALLANT, Jail Administrator;
and DUSTIN WAKEFIELD, Jailer                                                                DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Demario Scoggins, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court is Separate Defendants, Jana Tallant and Dustin Wakefield's (collectively "Separate Defendants"), Motion for Summary Judgment (ECF No. 13). Plaintiff requested the aide of the Court in responding to this Motion. ECF No. 17. Plaintiff then filed a Partial Response without aide of the Court. ECF No. 18. Subsequently, the Court propounded a questionnaire, and Plaintiff returned it as his Responses to Separate Defendants' Motion for Summary Judgment. ECF No. 20. After considering all of the briefing, the undersigned makes the following Report and Recommendation.

I.      **BACKGROUND**

As this case is before the Court on Separate Defendant's Motion for Summary Judgment, the Court will assume the facts as alleged by Plaintiff, the non-moving party, are true. The events

1

that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Howard County Detention Center ("HCDC") in Nashville, Arkansas as a pre-trial detainee. ECF No. 14, Ex. A. Plaintiff alleges his constitutional rights were violated by the conditions of his confinement and the denial of medical care. ECF No. 1. Plaintiff has brought this action against all Separate Defendants in their official and individual capacities. ECF No. 20, ¶¶ 2-3.

Specifically, Plaintiff claims he fell while getting out of the shower on May 25, 2011. ECF No. 1, p. 4. Plaintiff was taken to the hospital and prescribed pain medication but his back hurt so badly he "could hardly walk." ECF No. 1, p. 5. In the days after the May 25, 2011 fall, Plaintiff requested a wheelchair to help him get to the restroom but his requests were denied by Separate Defendant Jana Tallant, Jail Administrator ("Administrator Tallant"). ECF No. 1, p. 7. On May 28, 2011, when Plaintiff was attempting to use the restroom, his "legs went out" and he fell hitting his face on the toilet. Emergency Management Services ("EMS") was called, Plaintiff's bloody nose was checked by emergency medical technicians ("EMTs"), but he was not transported to the hospital. Plaintiff was then moved to an E cell—a single cell. ECF No. 1, p. 5.

On June 24, 2011, Plaintiff filed an Inmate Grievance Report complaining that his medical requests—filed on June 2, 8, and 17, 2011—regarding the pain in his back, were ignored. Further, Plaintiff complains that the "aspirin is not doing anything for the pain in my back . . . and I have been hurting for the last 3 weeks!!" Administrator Tallant responded, on the same day, that she would schedule Plaintiff a doctors appointment. Plaintiff alleges that "they" do not respond to his medical request or "they" tell him "they" are making him a doctors appointment but do not. ECF No. 1, p. 8.

On June 3, 2011, Plaintiff fell inside E cell. Plaintiff spilled a cup of water on the floor

but the "officer" would not bring Plaintiff a mop to clean it up.  Later in the night, Plaintiff got up to use the restroom, slipped in the water, and fell down.  ECF No. 1, p. 8.  The officer left Plaintiff laying on the floor.  ECF No. 1, p. 9.

Plaintiff claims he suffered such sever pain in his back during this time that he had to crawl to the restroom and the phone because he was afraid his "legs would go out from under" him.  ECF No. 1, p. 9.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-2 (1986), and a fact is material if it affects the outcome of the case, i*d.* at 248.  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.   DISCUSSION**

Separate Defendants argue (1) Plaintiff's official capacity claims fail because he did not allege a custom or policy of Howard County which resulted in a violation of his constitutional rights; (2) Plaintiff's conditions of confinement claims fail because the conditions claimed are not sufficiently serious to amount to constitutional violations; (3) Plaintiff's denial of medical care claim fails because he cannot show he suffered from an objectively serious medical need.

   a.   Official capacity claims

Plaintiff claims Separate Defendants violated his constitutional rights in both their official and individual capacities.  Separate Defendants argue Plaintiff has failed to show that a policy or custom of Howard County was the moving force behind any alleged constitutional violations.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir.1998), the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

Plaintiff claims that it is not Administrator Tallant's job to deny him medical attention

4

because "she is not a doctor and cannot diagnose" Plaintiff's problems. ECF No. 20, ¶ 2. Plaintiff did not assert any facts regarding an official capacity claims against Separate Defendant Dustin Wakefield, Jailer ("Jailer Wakefield"). ECF No. 20, ¶ 2.

Plaintiff has not proffered any facts or allegations that a custom or policy of Howard County was the moving force behind his claimed constitutional rights violations. Instead, Plaintiff appears to allege Administrator Tallant exceeded her job duties in denying his medical request. Accordingly, there is no basis on which Howard County may be held liable. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 & n. 55, 694 (1978) (plaintiff seeking to impose liability on local government body under Section 1983 must show official policy or widespread custom or practice of unconstitutional conduct that caused a deprivation of constitutional rights).

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 13) be **GRANTED** as to all official capacity claims.

    b. <u>Conditions of confinement</u>

Plaintiff alleges the denial of a wheelchair after his May 25, 2011 fall and the denial of a mop bucket on June 3, 2011 violated his constitutional rights. Separate Defendants argue that (1) these denials are not sufficiently serious to amount to a constitutional violation and (2) Plaintiff cannot show the requisite injury to state either denial violated his constitutional rights.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Plaintiff's claims are analyzed under the Fourteenth Amendment's due process clause, instead of the Eighth Amendment's cruel and unusual punishment clause, because he was a pretrial detainee and not a convicted prisoner at the time of the incidents. *See Bell v. Wolfish,* 441 U.S. 520, 535-6 (1979). However, the Eighth Circuit has applied the same standard to conditions of confinement claims based on either the Fourteenth or Eighth Amendment. *See Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. To meet the objective element the plaintiff must show the conditions of confinement pose a "substantial risk of serious harm." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). "The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.

6

1984) (quoting *Jackson v. Meachum,* 699 F.2d 578, 581 (1st Cir. 1983)).

    1. <u>Denial of mop and bucket</u>

Plaintiff claims that Jailer Wakefield denying him a mop bucket to clean up a spilled cup of water in his cell violated his constitutional rights. Separate Defendants argue that this denial is not sufficiently serious to amount to a constitutional violation.

According to Jailer Wakefield's June 3, 2011 Incident Report, at approximately 9:00 p.m., Plaintiff requested a mop bucket. Jailer Wakefield informed Plaintiff that the mop buckets would be passed out in the morning. Plaintiff responded that he spilled a cup of water but he could wait until the morning to clean it up. At approximately 10:40, Plaintiff complained to Jailer Wakefield about the lights and TV being turned off and then yelled, banged on his cell door, and repeatedly pushed the intercom button in his cell until approximately 10:55 p.m. Jailer Wakefield's shift ended at 11:00 p.m. ECF No. 14, Ex. H.

Plaintiff disputes Jailer Wakefield's version of the June 3, 2011 events. Specifically, Plaintiff did not tell Jailer Wakefield that he could wait until morning to mop up the water (ECF No. 20, ¶11); and Plaintiff did not stand at the intercom for twenty-five (25) minutes and argue with Jailer Wakefield, instead, the two exchanged words, Plaintiff hit the door twice, and then he went to bed (ECF No. 20, ¶12).

It is undisputed that at approximately 11:16 p.m., Jailer Piearcy found Plaintiff laying on the floor of his cell. Plaintiff advised Jailer Piearcy that he slipped on the water he spilled and hurt his hip, back, and head, and was bleeding in his nose and mouth. EMS was called. The EMTs examined Plaintiff and advised there was no need to take Plaintiff to the emergency room. The EMTs advised Plaintiff he could take over-the-counter pain medicine and he should not use a

pillow if his neck is hurting. Plaintiff did not complain anymore that night. ECF No. 14, Ex. I.

Courts have consistently found that wet or slipper floors do not constitute a substantial risk of serious harm in violation of the Eighth Amendment. *See e.g., Reynolds v. Powell,* 370 F.3d 1028, 1031 (10th Cir. 2004) ("slippery floors constitute a daily risk faced by members of the public at large"); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir 1993) ("[W]e do not find that shackling a dangerous inmate in a shower creates a sufficiently unsafe condition. Even if the floors of the shower are slippery and [the plaintiff] might fall while showering, slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.") (internal quotations and citations omitted); *Baez v. Rosemack*, Civil No. 09-2121, 2011 WL 4062586, at *8 (D. Minn. Aug, 9, 2011) (standing water around an ice machine does not pose substantial risk of serious harm even if defendants were aware of the water); *Carter v. Arkansas Department of Corrections,* Civil No. 5:08-cv-00222, 2008 WL 4102719, at *3 (E.D. Ark. Sept. 3, 2008) (a plaintiff that slipped and fell on water in his cell floor from a leaking skylight did not state a cognizable conditions of confinement claim under the Eighth Amendment). Therefore, considering the facts in the light most favorable to Plaintiff, a cup worth of water on Plaintiff's cell floor does not constitute a substantial risk of serious harm in violation of the Eighth Amendment.

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 13) be **GRANTED** as to Plaintiff's conditions of confinement claim regarding the water in his cell floor.

2. Denial of wheelchair

Plaintiff claims that his constitutional rights were violated when Administrator Tallant denied him a wheelchair after he returned from the emergency room on May 25, 2011. This claim

is interpreted by Separate Defendants as one to Plaintiff's conditions of confinement under the Eighth Amendment. Plaintiff did not challenge this interpretation in his Response. Separate Defendants argue that even if Plaintiff can show Administrator Tallant was deliberately indifferent to his need for a wheelchair, he cannot show any injury he suffered from the denial of the wheelchair or that than any injury is greater than *de minimis*.

The record reflects that, on May 25, 2011, Plaintiff reported to Jailer Bennet that he fell on his neck and back while coming out of the shower. EMS was called and Plaintiff was taken to the emergency room. ECF No. 14, Ex. B. The emergency room doctor, Dr. Patel, prescribed Plaintiff Ultram every four (4) to six (6) hours as needed for pain and flexeril three (3) times daily as needed for muscle spasms. ECF No. 14, Ex. C.

On May 27, 2011, Plaintiff requested a wheelchair from Administrator Tallant. In this request he stated he could not walk, he was confined to his bed, and he was crawling on the floor to use the restroom. ECF No. 20, Ex. 2. Additionally, on May 28, 2011, Plaintiff again requested a wheelchair stating he could not walk, could not take a shower, and was starting to smell. ECF No. 14, Ex. D. In contrast, Administrator Tallant states in her affidavit "[w]henever we observed Mr. Scoggins on video, he was able to walk around and move without any difficulty." ECF No. 14, Ex. K. Clearly there are issues of fact as to whether Plaintiff needed a wheel chair and whether Administrator Tallant was deliberately indifferent to this need.[1]

However, Plaintiff has not shown he suffered anything more than a *de minimis* injury as

---

[1] The Court notes that Separate Defendants also argue that Plaintiff was not instructed to use a wheelchair by the emergency room doctor on May 25, 2011 and in support of this argument Separate Defendants refer to "Exhibit L," however, there is no Exhibit L attached to Separate Defendants Brief in Support of Their Motion for Summary Judgment. ECF No. 14.

a result of Administrator Tallant's denial of the wheelchair. On May 28, 2011, Plaintiff suffered a sharp pain in his back that caused him to fall hitting his face on the toilet. Plaintiff maintains, he would not have fallen if Administrator Tallant had provided him with a wheelchair.[2] ECF No. 20, ¶ 19. According to Jailer Teresa Bennett's May 28, 2011 incident report, she was informed by Inmate Lawrence Swift that Plaintiff fell in his pod and "busted his face." When Jailer Bennett responded, she found Plaintiff "laying on the floor next to the toilet with blood on the toilet and floor." Plaintiff reported that he fell at the toilet due to his injured back. EMS was called. The EMTs cleaned Plaintiff's bloody nose and informed the deputies and Plaintiff that "nothing more could be done to treat [Plaintiff's] 'back problems.'" ECF No. 14, Ex. E.

Claims under the Eighth Amendment require a compensable injury that is more than *de minimis*. *Cummings v. Malone,* 995 F.2d 817, 822–23 (8th Cir. 1993). However, no clear line divides *de minimis* and greater than *de minimis* injuries. One common sense approach offered by the Northern District of Texas is to ask "would the injury require . . . a free world person to visit an emergency room, or have a doctor attend to . . . or . . . [provide] medical treatment for the injury?" *Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997). In *Luong,* the Court held that scratches, minor abrasions, and contusions constituted a *de minimis* injury, stating, "[a] physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Id.* The *Luong* case concerned an Eighth Amendment

---

[2] The Court notes there are issues of fact as to whether Plaintiff actually fell on May 28, 2011 or orchestrated the scene to create the appearance of a fall. ECF No. 14, Ex. 10; ECF No. 20, ¶¶ 15-16. The Court need not address this issue as the injuries suffered from the incident on May 28, 2011 are *de minimis* regardless of whether they were self inflicted or the result of a fall.

allegation of failure to protect, however, the same requirements have been applied to conditions of confinement claims.  *See, e.g., Burgie v. Harris,* Civil No. 5:06-cv-00258, 2008 WL 90016, at *4 (E.D. Ark. Jan. 7, 2008) (holding plaintiff's conditions of confinement claim should be dismissed where plaintiff presented no evidence of physical injury suffered by the alleged conditions of confinement and defining physical injury as one that is greater than *de minimis.*).

Plaintiff does not dispute the summary judgment evidence that as a result of the fall on May 28, 2011 he suffered a bloody nose, was examined by EMTs, and the EMTs determined he did not require any further treatment.  ECF No. 20, ¶ 7.  I find Plaintiff has not shown his bloody nose was anything more than *de minimis* and therefore, his injury does not implicate the constitution.  *See e.g., Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (cracked dental plate, loose teeth, bruises, and swelling are greater than *de minimis* injuries); *Irving,* 519 F.3d at 448 ( a blow to the face causing two months of troubled breathing are greater than *de minimis* injuries); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (relatively minor scrapes and bruises and a less-than permanent shoulder aggrevation are *de minimis* injuries); *Wyatt v. Delaney,* 818 F.2d 21, 23 (8th Cir. 1987) (a light accidental blow to the face that caused two small scratches inside the prisoner's mouth are *de minimis injuries*); *McClanahan v. City of Moberly,* 35 F. Supp.2d 744, 746 (E.D. Mo. 1998) (pre-trial detainee complained of being slapped in the face three times by officer causing a bloody nose suffered only a *de minimis* injury which does not implicate the Constitution).  Therefore, Plaintiff's condition of confinement claim regarding the denial of a wheelchair fails as a matter of law.

Accordingly, I recommend Separate Defendant's Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim regarding the denial of a wheelchair after the May 25, 2011

incident.

    c. <u>Denial of Medical Care</u>

Plaintiff claims Administrator Tallant denied him medical care in connection with his back pain. Separate Defendants argue Plaintiff cannot state a constitutional violation based on the denial of medical care because he cannot show he suffered from a serious medical need.

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his denial of medical care claim, Plaintiff must prove that Separate Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal

12

recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

As discussed above, it is undisputed that, on May 25, 2011, HCDC officers responded to Plaintiff's cell and found him laying on the floor. Plaintiff advised the jailer that he fell coming out of the shower and landed on his neck and back. EMS was called, and Plaintiff was transported to the emergency room. ECF No. 14, Ex. B; ECF No. 20, ¶ 4. At the emergency room, Dr. Patel prescribed Plaintiff pain medication and muscle relaxers as needed for pain. ECF No. 14, Ex. C; ECF No. 20, ¶ 5.

Plaintiff also does not dispute that on May 28, 2011 he was found by Jailer Bennett "laying on the floor next to the toilet with blood on the toilet and floor." Plaintiff reported to Jailer Bennett that he fell at the toilet due to his back injury. EMS was called. EMTs cleaned up Plaintiff's bloody nose and advised the deputies that "nothing more could be done to treat [Plaintiff's] 'back problems.'" Plaintiff was moved to E cell so he could be observed. ECF

13

No. 14, Ex. E; ECF No. 20, ¶¶ 7-8.

Finally, Plaintiff does not dispute the decision by EMTs not to transport him to the hospital on May 28, 2011 or June 3, 2011.  ECF No. 20.

Therefore, I find no genuine issue of material fact as to whether Plaintiff was denied medical care on May 25, May 28, and June 3, 2011.

Plaintiff does, however, complain that his medical request after the May 28, and June 3, 2011 falls, regarding his continued back pain, were all denied.  ECF No. 20, Ex. 1.  Separate Defendants argue that Plaintiff cannot show he was suffering from an objectively serious medical need during the time period at issue here.

The summary judgment record is devoid of any evidence suggesting Plaintiff suffered from an objectively serious medical need after his May 28, 2011 fall or in the weeks after his June 3, 2011 fall.  Plaintiff's bare allegations of back pain without supporting summary judgment evidence are insufficient to state an objectively serious medical need. *See e.g., Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (a prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from kidney stones" when the "available medical evidence does not support his self-diagnosis.").  Plaintiff does not dispute the summary judgment evidence that he was examined by EMTs on May 28 and June 3, 2011, and the EMTs determined that Plaintiff did not need further treatment.  ECF No. 20, ¶ 7, 13.

When asked if he received treatment for his back pain since leaving the HCDC, Plaintiff states in his Response: "I receive pain medication for my back and am currently awating (sic) to see a doctor to get my meds back started and x-rays on my back to get my medical class changed . . . have been going through the process everysince (sic) I got to E.A.R.U. from Howard County."

14

ECF No. 20, ¶ 17. Plaintiff contradicts himself in this statement and offers no evidence that he has actually received any treatment for his back pain since arriving at the Arkansas Department of Corrections in September 2011. Further, Plaintiff has not provided any evidence to show that Administrator Tallant should have easily recognized the necessity of a doctor's attention to his back pain in contradiction to the EMTs professional medical opinion that Plaintiff did not require further treatment. Therefore, Plaintiff has failed to present any facts to create a genuine issue of whether he suffered from an objectively serious medical need. *See Schaub*, 638 F.3d at 914.

Moreover, even if Plaintiff did suffer from an objectively serious medical need he has not created a genuine issue of material fact as to whether Separate Defendants were deliberately indifferent to his medical needs. *See e.g., Krout v. Goemmer*, 583 F.3d 557, 568 (8th Cir. 2009) (evidence showing that (1) officers closely monitored the detainee, (2) the detainee was examined by EMTs and EMTs advised the officers that the detainee did not require emergency medical attention, and (3) the detainee declined medical attention was insufficient to demonstrate deliberate indifference on the part of the officers even though the detainee could not move his arms and legs, suffered breathing difficulties, and later died from his injuries).

Again, it is undisputed that Plaintiff was moved to E Cel, so he could be observed more closely, immediately following his May 28, 2011 fall. ECF No. 14, Ex. E. Further, on May 31, 2011, Plaintiff filed an Inmate Request Form stating he could stand and take a few steps but he could not walk well enough to get to the court house. Plaintiff stated he was "feeling a little better everyday" and requested to be moved back to B pod because the single cell was "starting to get to [him]." Administrator Tallant responded on the Request Form that the decision was made to leave Plaintiff in E cell because it is smaller and requires less walking. Administrator Tallant also

15

responds to Plaintiff that "it is in your best interest at this time." ECF No. 14, Ex. F.

On June 2, 2011, Plaintiff filed another Inmate Request Form stating:

> Can I please go back to B pod Mrs. Jana I'm begging you, you wont have any problems outta me Im getting very depressed over here by myself I need to be around some people I promise I wont give you any more trouble can you please or at least tell me why I cant move?? thank you

ECF No. 14, Ex. G.  Administrator Tallant responded:

> We can monitor you better by camera at all times.  It is a smaller cell with less walking for you and has a seat in the shower so you don't have to stand for a long period of time.  It is all in your best interest.

ECF No. 14, Ex. G.  Plaintiff does not dispute that he made these two (2) request to be moved out of the single E cell.  ECF No. 20, ¶¶ 9-10.

Finally, Administrator Tallant, by affidavit, states that Plaintiff was observed on video walking and moving around without difficulty during the time at issue and that she did not believe Plaintiff had a legitimate medical need requiring a doctor visit.  ECF No. 14, Ex. K.

Plaintiff does not dispute that Separate Defendants moved him into E cell so they could monitor him more closely or, as stated above, that EMTs examined him after he feel on both May 28, and June 3, 2011 and determined he did not require further medical attention.  Plaintiff also does not point the Court to any specific facts to create a genuine issue of material fact as to whether Administrator Tallant was deliberately indifferent to a serious medical need.  ECF No. 20, ¶¶ 8, 13.  Therefore, Plaintiff has not created a genuine issue of fact as to whether Separate Defendants were deliberately indifferent.

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 13) be **GRANTED** as to Plaintiff's denial of medical care claim.

16

IV.     **CONCLUSION**

For the reasons stated above, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 13) be **GRANTED** and this case be dismissed with prejudice.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **28th day of August 2012.**

                                                                 /s/ Barry A. Bryant
                                                                 HON. BARRY A. BRYANT
                                                                 UNITED STATES MAGISTRATE JUDGE